UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

MAINE MEDICAL CENTER, )
 )
       Plaintiff )
 )
v. ) No. 2:09-cv-652-GZS
 )
UNITED STATES OF AMERICA, )
 )
       Defendant )
 )

### ORDER ON DISCOVERY DISPUTE

The instant discovery dispute arose when the government refused to answer interrogatories or respond to Maine Medical Center's ("MMC's") request for production of documents bearing on MMC's request for a refund of Federal Insurance Contributions Act ("FICA") taxes paid in 2001.[1] At MMC's request, I held a teleconference with the parties on January 21, 2011, during which the government argued, in relevant part, that the discovery sought was unduly burdensome and irrelevant because:

    1.      The Internal Revenue Service ("IRS") has no record of ever having received the refund request;

    2.      MMC cannot show timely filing pursuant to the applicable statute, 26 U.S.C. § 7502;

---

[1] MMC sought reimbursement of FICA taxes paid on behalf of its medical residents for tax periods ending in 2001, 2002, and 2003. *See* Memorandum of Law in Support of Maine Medical Center's Motion To Compel Discovery ("MMC Brief") (Docket No. 23) at 1. For 2002 and 2003, the government has conceded both the substance of MMC's claims and that the claims were timely filed. *See id.*; *see also* Report of Conference of Counsel and Order (Docket No. 19). Thus, the sole remaining issue is whether the 2001 claim was timely filed.

1

3. There is a split in the circuits regarding whether the common-law "mailbox rule" survived the enactment of section 7502. However, even assuming *arguendo* that the First Circuit would hold that it did, that does not help MMC because MMC claims to have mailed its refund request on April 15, 2005, the day that it was due, too late to have been timely filed pursuant to the mailbox rule; and

4. In the absence of MMC's ability to prove timely filing, the court lacks jurisdiction to adjudicate the 2001 refund claim and, hence, the discovery sought is impermissible.

MMC contended that (i) it could indeed prove timely filing pursuant to an amalgam of the provisions of section 7502 and the mailbox rule, (ii) in any event, final resolution of that question at this (discovery) stage is premature, and (iii) it is entitled to discovery with respect to the handling of the missing claim by the IRS. Hence, it argued, the government should be compelled to respond to its discovery requests.

At the conclusion of the teleconference, without objection, I directed the parties to file simultaneous briefs, by noon on January 28, 2011, addressing the following potentially dispositive legal issues with respect to the discovery at issue: (i) whether, as a matter of law, the plaintiff is precluded from relying on the mailbox rule unless it mailed its request for a refund sufficiently in advance of the due date to have ensured, in the ordinary course, its receipt by the due date, and (ii) whether there is authority for the proposition that section 7502 may be supplemented by the mailbox rule. *See* Report of Hearing and Order re: Discovery Dispute (Docket No. 22) at 2. For purposes of resolution of the instant discovery dispute, I directed the parties to assume that, in the face of a split among the United States Circuits Courts of Appeals as to whether section 7502

provides the exclusive means by which a taxpayer can prove timely filing with the IRS, the First Circuit would side with those courts holding section 7502 non-exclusive. *See id.* at 2 n.1.

The parties timely filed the required briefs. *See* MMC Brief; United States' Brief in Support of Its Position That This Court Lacks Jurisdiction Over the Plaintiff's Claim for 2001 ("Gov't Brief") (Docket No. 24) & exhibits thereto. With the benefit of those briefs, and treating the instant discovery dispute as a motion by MMC to compel discovery, I now deny that motion.

## I. Factual and Procedural Background

Kevin Montminy, then MMC's Acting Director, Audit and Compliance Services, discussed a potential FICA refund claim with Al Swallow, MMC's Associate Vice President of Finance, as early as August 23, 2004. *See* Plaintiff's Answers to United States' First Set of Interrogatories ("Plaintiff's Interrog. Ans.") (Docket No. 24-1), Exh. 1 to Gov't Brief, ¶ 1 at 3.[2] Montminy continued to monitor, and discuss with others inside and outside of MMC, the potential of a refund. *See id.* The subject was raised again during a conference call on March 16, 2005, with accountants Maggie O'Brien and Jeanne Schuster from Ernst & Young. *See id.*

In early April 2005, Montminy began preparing a refund claim. *See id.* He faxed a copy of the draft refund claim to Schuster, who had been advising MMC about the FICA refund issue. *See id.* On April 4, Schuster emailed comments and suggestions for a revised draft claim. *See id.* It was unclear to Montminy whether the protective filing needed to include a specific amount for the refund claim or whether it could be more general. *See id.* He emailed another accountant, Jocelyn Bishop

---

[2] The employees to whom MMC refers are employees of MaineHealth/MMC. *See* Plaintiff's Interrog. Ans. ¶ 1 at 4. For ease of reference, and because nothing turns on whether they are MMC and/or MaineHealth employees, I have referred to them as MMC employees.

at PriceWaterhouseCoopers, on April 6 with that question, expressly noting that the filing was "due 4/15/05." *Id*.

In an April 6 email to Schuster, Montminy indicated that MMC "had been told that the totals were not required for protective claims and thus we haven't done any leg work to compile the data yet." *Id*. On April 7, Schuster recommended, after checking with her firm's FICA refund expert, that the form include specific refund amounts. *See id*. Ernst & Young's subsequent invoice "for professional tax services rendered through April 15, 2005" contains an entry in the amount of $1,650.00 for "tax research, discussions and email correspondence on review of 2001 Medical Resident FICA protective refund claim including coordination with EY National refund claim expert on implications of claims filed without amounts of refund anticipated." *Id*.

At approximately 11 a.m. on April 12, Montminy met with Swallow and two other MMC employees, John Heye, Vice-President of Finance and Treasurer, and Gene Joyner, Assistant Director of Financial Planning, to review the status of the FICA refund issue. *See id*. ¶ 1 at 3-4. They decided to file the refund claim on April 15 and to include the specific amount of the refund being claimed. *See id*. ¶ 1 at 4. Later that afternoon, Montminy sent an email to Jeff Winchenbach, the Director of Financial Services, stating:

> I am trying to complete a filing for John Heye to approve by Friday, April 15. Question, can you determine the amount of FICA paid to residents of MMC for the calendar year 2001 through [the Lawson database system] . . . . John would like to corroborate the filing with a listing, by resident, of the FICA withheld.

*Id*.

Montminy and Winchenbach completed their exchange of emails regarding the amount of FICA paid for medical residents at 6:34 p.m. on Thursday, April 14. *See id*. At approximately 2:30 p.m. on Friday, April 15, Montminy met with Heye at his office at Maine Medical Center. *See id*.

4

Heye signed the refund claim. *See id.* Montminy then returned to his office on Washington Avenue in Portland, had his assistant, Debbie Raspiller, prepare the mailing to be sent by certified mail, and, at 3:22 p.m., faxed the signature page back to Heye for his files. *See id.* At the time, Montminy's standard practice in dealing with tax and other filings that had to be postmarked on the same day was to drive to the main U.S. Post Office on Forest Avenue in Portland and mail the filing by certified mail, return receipt requested. *See id.* He believes that he followed that standard practice in mailing the FICA refund claim for 2001 on April 15. *See id.*

No one at MMC has a specific recollection of this particular mailing. *See id.* ¶ 2 at 5. In accordance with standard practice, however, MMC would have used the United States Postal Service ("USPS") to mail the 2001 refund claim. *See id.* The claim was mailed from the post office located at 125 Forest Avenue in Portland, Maine. *See id.* MMC does not know the identity of the USPS employee who handled the mailing of the claim. *See id.*

MMC admits the following:

1. The claim could not have been delivered to the IRS until after April 15, 2005. *See* Plaintiff's Response to United States' First Set of Requests for Admission (Docket No. 24-2), Exh. 2 to Gov't Brief, ¶ 3.

2. MMC does not have a copy of either a certified mail receipt or a registered mail receipt for the mailing of the claim. *See id.* ¶ 6.

3. MMC does not have either the original of the postmarked envelope/wrapper that it claims contained the claim or a copy of that envelope/wrapper. *See id.* ¶ 7.

4. The claim was not mailed for same-day delivery. *See id.* ¶ 8.

The interrogatories to which MMC seeks to compel an answer include:

5

1. The time, date, and location of searches made for federal tax returns and/or tax refund claims filed since 2000 by MMC and/or MaineHealth, together with (i) the identity of all persons who participated in such searches, (ii) a detailed description of how the search was conducted and how long it lasted, and (iii) identification or production of all documents located during the search, *see* United States' Answers to Plaintiff's First Set of Interrogatories, supplied by MMC incident to its request for a discovery conference, ¶ 1 at 3;

2. A description of where and how federal tax returns and/or tax refund claims filed since 1996 by MMC and/or MaineHealth have been recorded, stored, or retained, including whether such returns and/or claims have been lost or destroyed, *see id*. ¶¶ 2-3 at 3;

3. The steps the IRS routinely took to process claims from institutions seeking refunds for FICA taxes paid by and for medical residents for each tax year since 2000, and the three persons most knowledgeable about those steps, *see id*. ¶¶ 5-6 at 4; and

4. The identity of all committees, consultants, government agencies, news organizations, or other groups, and all individual persons, whether employed by the IRS or by third parties, who are known or believed to have studied, analyzed, examined, reported about, or otherwise considered since 2000 the issue of how the IRS receives, stores, maintains, keeps, loses, misplaces, or destroys documents submitted to it by taxpayers, *see id*. ¶ 8 at 5.

MMC seeks, *inter alia*, documents that include (i) any and all tax refund claims filed since 2000 by MMC and/or MaineHealth, (ii) each and every search made by the IRS for such documents, (iii) documents concerning how federal tax returns and/or tax refund claims filed since 1996 by MMC and/or MaineHealth have been indexed, catalogued, or otherwise recorded, (iv) documents describing or discussing the IRS' policies concerning searches for taxpayers' documents,

(v) documents concerning how the IRS receives, stores, maintains, keeps, loses, misplaces, or destroys documents submitted to it by taxpayers and/or containing recommendations about how the IRS can or should improve its ability to maintain, search, and retrieve such documents, and (vi) documents concerning the IRS's efforts since 2000 to improve its ability to maintain, search, and retrieve documents submitted by taxpayers. *See* United States' Answers to Plaintiff's First Request for Production of Documents, supplied by MMC incident to its request for a discovery conference, ¶¶ 2-3, 5, 7, 10-11.

## II. Discussion

In its memorandum, MMC makes clear that it does not rely solely on the common-law mailbox rule to prove timely filing. *See* MMC Brief at 2. Instead, it relies on a combination of section 7502 and the mailbox rule, citing three cases for the proposition that extrinsic evidence is admissible to prove entitlement to the "timely mailing [is] treated as timely filing" presumption of section 7502(a)(1). *See id.* at 3-6 (citing and discussing *Estate of Wood v. Commissioner*, 909 F.2d 1155 (8th Cir. 1990), *Anderson v. United States*, 966 F.2d 487 (9th Cir. 1992), and *Lewis v. United States*, 942 F. Supp. 1290 (E.D. Cal. 1996)).

MMC further asserts that "[w]holly apart from the question whether extrinsic evidence is admissible to prove the date of mailing and postmark, MMC is entitled to discovery testing the premise underlying the government's entire argument; namely, its bald assertion that it does not have MMC's refund claim for 2001." *Id.* at 6. It complains, "The government has refused to answer the most fundamental inquiries about what it has done to search for that claim, who conducted those searches, or how MMC's tax records are physically or electronically kept." *Id.* It cites *Lee Brick & Tile Co. v. United States*, 132 F.R.D. 414 (M.D.N.C. 1990), for the proposition that the

7

government has been ordered to respond to similar discovery requests. *See id*. at 7-8.

## A. MMC's Ability To Prove Timely Filing

A timely filing of a refund claim is a jurisdictional prerequisite for a tax refund action in federal district court. *See, e.g., Philadelphia Marine Trade Ass'n-Int'l Longshoremen's Ass'n Pension Fund v. Commissioner*, 523 F.3d 140, 146 (3d Cir. 2008); *Lee Brick*, 132 F.R.D. at 417. The taxpayer bears the burden of adducing sufficient proof to raise a presumption of timely mailing, *see, e.g., Sorrentino v. IRS*, 383 F.3d 1187, 1194 n.10 (10th Cir. 2004), and to show that the court has jurisdiction over its tax refund action, *see, e.g., Lee Brick*, 132 F.R.D. at 417.

Prior to the enactment of 26 U.S.C. § 7502, taxpayers could prove timely filing only by actual, timely delivery of a claim to the IRS or by invocation of the common-law mailbox rule. *See, e.g., Philadelphia Marine*, 523 F.3d at 147 (statutory filing requirement generally can be satisfied only be actual, physical delivery to the government, although, to help determine when a document was physically delivered, courts developed the mailbox rule, which raises a presumption that the USPS delivered a document to the addressee in the usual time); *Lee Brick*, 132 F.R.D. at 418 ("The general rule is that the tax document in question is considered filed when it is delivered to the IRS. The Internal Revenue Code requires actual receipt or payment.") (citations omitted). Pursuant to the mailbox rule, "[f]ederal courts routinely applied the common law presumption that properly mailed documents would actually be received in due course by the addressee, but unless same-day delivery was in fact the norm, receipt by the addressee was not deemed to have occurred on the same day as the mailing." *Carroll v. Commissioner*, 71 F.3d 1228, 1230 (6th Cir. 1995) (citation omitted).

In 1954, "Congress enacted section 7502 to mitigate the harshness of the old common law physical delivery rule which had required that tax documents must be physically received by the IRS

8

on time to be timely filed." *Anderson*, 966 F.2d at 490; *see also Carroll*, 71 F.3d at 1230. "Section 7502 carves out an exception to the physical delivery rule by creating a statutory 'mailbox rule.'" *Anderson*, 966 F.2d at 490. "The statute allows a taxpayer to prove timely filing on the basis of timely mailing notwithstanding the date of physical delivery of the tax return to the IRS." *Id*. *See also, e.g., Philadelphia Marine*, 523 F.3d at 152 (section 7502 "actually excuses late receipt" and is "thus an extra taxpayer protection beyond what the common-law mailbox rule provides").

Section 7502 provides, in relevant part:

**(a) General rule. –**

**(1) Date of delivery. –** If any return, claim, statement, or other document required to be filed, or any payment required to be made, within a prescribed period or on or before a prescribed date under authority of any provision of the internal revenue laws is, after such period or such date, delivered by United States mail to the agency, officer, or office with which such return, claim, statement, or other document is required to be filed, or to which such payment is required to be made, the date of the United States postmark stamped on the cover in which such return, claim, statement, or other document, or payment, is mailed shall be deemed to be the date of delivery or the date of payment, as the case may be.

**(2) Mailing requirements. –** This subsection shall apply only if –

**(A)** the postmark date falls within the prescribed period or on or before the prescribed date –

(i) for the filing (including any extension granted for such filing) of the return, claim, statement, or other document, or

(ii) for making the payment (including any extension granted for making such payment), and

**(B)** the return, claim, statement, or other document, or payment was, within the time prescribed in subparagraph (A), deposited in the mail in the United States in an envelope or other appropriate wrapper, postage prepaid, properly addressed to the agency, officer, or office with which the return, claim, statement, or other document is required to be filed, or to which such payment is required to be made.

***

**(c) Registered and certified mailing; electronic filing. –**

**(1) Registered mail.** – For purposes of this section, if any return, claim, statement, or other document, or payment, is sent by United States registered mail –

**(A)** such registration shall be prima facie evidence that the return, claim, statement, or other document was delivered to the agency, officer, or office to which addressed; and

**(B)** the date of registration shall be deemed the postmark date.

**(2) Certified mail; electronic filing.** – The Secretary is authorized to provide by regulations the extent to which the provisions of paragraph (1) with respect to prima facie evidence of delivery and the postmark date shall apply to certified mail and electronic filing.

26 U.S.C. § 7502(a) & (c).

MMC, understandably, does not rely solely on the common-law mailbox rule: it admits that it did not mail the refund claim at issue until April 15, 2005, the deadline for its filing – an insufficient time for the claim to be presumed to have been delivered by that date. It also does not attempt to avail itself of the provisions of section 7502(c): it admits that it does not have a copy of either a certified mail receipt or a registered mail receipt for the mailing of the 2001 refund claim. Instead, it relies on section 7502(a) as supplemented by extrinsic evidence – a kind of hybrid of the common-law and statutory provisions. *See* MMC Brief at 3-6.

As a threshold matter, the government contends that section 7502(a), unlike section 7502(c), facially requires that a document *actually have been delivered* to the IRS. *See* Gov't Brief at 5-6; *see also* 26 U.S.C. § 7502(a). Section 7502(a) has indeed been so construed by the IRS, *see* 26 C.F.R. § 301.7502-1(e)(1) (with certain exceptions, not relevant here, "section 7502 is not applicable unless

the document or payment is delivered by U.S. mail to the agency, officer, or office with which the document is required to be filed or to which payment is required to be made"), and by several courts, *see, e.g., Philadelphia Marine*, 523 F.3d at 148 (section 7502(a)(1) "protects the taxpayer only where the IRS actually receives the document at some later time" than the due date); *Reilly v. United States*, No. 91-CV-4625 (RJD), 1992 WL 455406, at *1 (E.D.N.Y. Dec. 3, 1992) ("Undoubtedly, plaintiffs do not fall within the parameters of section 7502(a), which requires actual delivery to the IRS. First, there is no evidence that the IRS actually received the claim. Moreover, plaintiffs have not produced a postmarked envelope which would establish the date of receipt, if the IRS *had* in fact received the claim.") (emphasis in original); *Lee Brick*, 132 F.R.D. at 418 ("[I]n Section 7502(a)(1), if a document is actually received by the IRS but belatedly delivered, the taxpayer may rely on a postmark, which is dated on or before the filing deadline and placed on the document either by the United States Post Office or a private postal vending machine, to establish, through the postmark, timely delivery.").

In *Lewis*, one of the three cases on which MMC primarily relies, the document in question was actually received by the IRS on April 26, 1993, 11 days after it was due, but the IRS could not locate the envelope in which it was mailed. *See Lewis*, 942 F. Supp. at 1291. In permitting extrinsic evidence that the envelope had in fact borne a postmark date of April 15, 1993, as required to invoke the protections of section 7502(a)(1), the court noted "the inherent unfairness of not considering indirect evidence of a timely postmark, i.e., timely mailing, when the only direct evidence was

11

destroyed by the IRS." *Id*. at 1293 (citation and internal punctuation omitted). *Lewis*, thus, does not help MMC.[3]

As MMC observes, *see* MMC Brief at 3-4, and the government acknowledges, *see* Gov't Brief at 6, there is at least one case, *Wood*, permitting a taxpayer to invoke the protections of section 7502(a)(1) *despite* the IRS's allegation of non-delivery, *see Wood*, 909 F.2d at 1161. The government argues, and I am inclined to agree, that in this respect *Wood* was wrongly decided. *See* Gov't Brief at 6. As Chief Judge Lay observed in dissenting from the majority opinion of the three-member panel in *Wood*, it is difficult to square that holding with the plain language of section 7502(a)(1):

> Contrary to the majority's reasoning that the 'hallmark' of these sections [7502(a) and (c)] is the postmark, my reading of the statute is that 'delivery' is the essential requirement under subsection (a) of the statute. Subdivision (a) addresses the 'date of delivery,' and requires that the document be 'delivered by United States mail.' I am unable to agree with the majority that the postmark is the controlling factor when the plain language of the statute relegates the postmark to irrelevancy if the document is not delivered.

*Wood*, 909 F.2d at 1162 (Lay, C.J., dissenting).

While the United States Court of Appeals for the Ninth Circuit in *Anderson*, the third case on

---

[3] MMC argues that there is no distinction between the policy considerations at play when the IRS receives a claim but loses the envelope bearing the postmark, as in *Lewis,* and those at play when the IRS loses an entire claim. *See* MMC Brief at 5-6. It notes that the IRS habitually loses, misplaces, and destroys properly mailed documents. *See id*. at 7. Nonetheless, when the IRS possesses a claim, there can be no doubt that the taxpayer did in fact mail the claim and that someone or some entity other than the taxpayer, either the postal service or the IRS, is responsible for the loss of the outer envelope. When an entire claim is missing, there is no such certainty. While this distinction may produce harsh or inequitable results, taxpayers are not without recourse. If they obtain and preserve proof of mailing by registered or certified mail, they can avail themselves of the safe harbor of section 7502(c). *See, e.g., Sorrentino*, 383 F.3d at 1195 ("To be sure, the IRS loses tax returns; nevertheless, the taxpayer is in the best position with the clock running to protect himself by procuring independent evidence of postmark and/or mailing, whether by mail receipt, corroborating testimony, or otherwise. This is especially true where a refund or credit is involved because no cancelled check will exist to verify receipt."). Indeed, MMC contends that it did send the claim at issue by certified mail, although unfortunately it does not have the receipt.

12

which MMC primarily relies, purported to follow *Wood*, *see Anderson*, 966 F.2d at 491, the taxpayer in *Anderson* did not need the benefit of section 7502: she produced evidence that she had mailed her claim to the IRS sufficiently in advance of the due date that she could invoke the common-law mailbox rule, *see id*. at 488. *Anderson*, thus, is properly understood as holding that section 7502 does not preclude invocation of the common-law mailbox rule, not that a taxpayer who has not mailed a claim sufficiently in advance of the deadline to avail himself or herself of the common-law mailbox rule may nonetheless invoke the protections of section 7502(a)(1) *despite* non-delivery of the claim to the IRS. *See Anderson*, 966 F.2d at 489 ("As applied to the facts of Anderson's case, the language of section 7502 does not set forth an exclusive limitation on admissible evidence to prove timely mailing and does not preclude application of the common law mailbox rule.").

In this case, there is no evidence that the IRS ever received MMC's 2001 refund request, let alone the envelope in which it was filed. That is fatal to MMC's invocation of section 7502(a)(1) and, thus, its bid to prove timely filing and to invoke the court's jurisdiction to resolve the instant refund-request dispute.

Moreover, as the government alternatively argues, *see* Gov't Brief at 6-7, even assuming *arguendo* the applicability of *Wood*, MMC fails to muster sufficient evidence of the existence of an April 15, 2005, postmark to meet *Wood*'s exacting standards. The *Wood* majority permitted a taxpayer to invoke the protections of section 7502(a)(1) despite the IRS's allegation of non-receipt in circumstances in which (i) an estate tax return had been due on Monday, March 22, 1982, (ii) the personal representative of the estate testified that he mailed the return on Friday, March 19, 1982, specifically mentioning to the postmistress, whom he had known since high school, that the envelope he was mailing contained the federal estate tax return in question, which was due Monday, and so

13

had to be postmarked as of that day, and he watched her weigh the envelope, put postage on it, cancel it, and put it into the appropriate bundle of outgoing mail, and (iii) the postmistress testified that she remembered the conversation with the personal representative and remembered having hand-canceled the envelope on a Friday afternoon and having placed it in an appropriate mailing pouch. *See Wood*, 909 F.2d at 1156-57.

The *Wood* majority observed:

> [W]e must note the narrowness of our holding. To obtain the benefit of section 7502, the taxpayer must offer proof of postmark – not mere evidence of mailing – as by the testimony of the postal employee who handled and stamped the document. Moreover, by the terms of the statute, only direct proof of postmark, which proof will be extraordinarily rare outside the instances specified in the statute, will satisfy the requirements of the act. And, finally, under subsection (a)(1), even direct proof of postmark raises only a presumption of delivery, which is rebuttable by the Commissioner.

*Id*. at 1161 (citations omitted).

By contrast, no MMC witness has a specific recollection of mailing the tax refund claim at issue, and there is no postal service evidence from which the court could conclude that the envelope containing the claim bore a postmark of April 15, 2005. *Wood* thus does not help MMC.

I am mindful that some courts have applied a less exacting standard than the *Wood* court for the quantum of proof necessary to demonstrate timely delivery of a claim to the IRS. Yet, those less exacting standards have been applied in contexts materially different from the instant one: those of invocation of the common-law mailbox rule without reliance on section 7502, *see, e.g., Lee Brick*, 132 F.R.D. at 420, and of invocation of section 7502 in circumstances in which there is no dispute that a claim actually was delivered to the IRS, *see, e.g., Lewis v. United States*, 144 F.3d 1220, 1223 (9th Cir. 1998). MMC supplies no authority for the proposition that, in a situation identical to that presented in *Wood*, a standard less exacting than that of *Wood* has been applied.

In any event, even assuming *arguendo* that MMC could avail itself of the *Wood* holding and yet claim the benefit of an extrinsic evidence standard less stringent than that set forth in *Wood*, its evidence still would fall short. To prove a timely IRS claims filing even in the context of sole reliance on the common-law mailbox rule or of invocation of section 7502(a)(1) where there is no dispute that a claim actually was delivered to the IRS, a taxpayer must offer something more than self-serving testimony. *See, e.g., Crook v. Commissioner*, 173 Fed. Appx. 653, 657 (10th Cir. 2006) ("Despite the disagreement between the circuits as to the type of proof which may be admitted to prove the date of mailing, no court has relied solely on the uncorroborated testimony of the taxpayer.") (footnote omitted); *Sorrentino*, 383 F.3d at 1191 ("Self-serving declarations of mailing, without more, are insufficient to invoke the [common-law mailbox rule] presumption."); *Lewis*, 144 F.3d at 1221, 1223 (taxpayers adduced sufficient evidence to avail themselves of section 7502(a)(1) when, in addition to taxpayer's own sworn declaration that he mailed an IRS extension application with two checks on April 15, 1993, and a state extension application with one check the same day, the taxpayers showed the existence of three checks signed on April 15, two to the IRS and one to the state that had been cashed on April 16, "indubitable proof that it had been mailed before that day"); *Lee Brick,* 132 F.R.D. at 421 ("Strong evidence of mailing will, in most cases, require more than statements by the taxpayer but rather independent evidence. The requirement of strong or independently verifiable evidence of mailing is necessary in order to avoid taxpayer fraud.") (citations omitted).

While MMC offers strong evidence that it worked aggressively to make a timely claim for a refund of 2001 FICA taxes and that it fully intended to do so, it does not offer strong or independently verifiable evidence of the actual mailing of the claim, let alone of the date of the

15

postmark affixed to the outer wrapping. Indeed, no one at MMC has a specific recollection of the mailing of the claim, with MMC relying on the likelihood that its employee followed his standard mailing practices to prove its actual mailing.

For these reasons, MMC cannot as a matter of law invoke the benefit of section 7502(a)(1). Therefore, it cannot prove the court's jurisdiction over its claim for a 2001 refund.

### B. Context of Discovery

MMC finally argues that, wholly apart from the question of whether it can prove timely filing by way of extrinsic evidence, it "is entitled to discovery testing the premise underlying the government's entire argument; namely, its bald assertion that it does not have MMC's refund claim for 2001." MMC Brief at 6. Yet, *Lee Brick*, the case on which MMC relies for the proposition that the government has been ordered to respond to discovery requests similar to its own, *see id.* at 7, makes clear that "[t]he resolution of [such a] discovery dispute cannot be made without first taking a peek at the merits of the underlying controversy[,]" *Lee Brick*, 132 F.R.D. at 416. The *Lee Brick* court concluded that entitlement to such discovery hinges on the making of at least a *prima facie* showing of proof of timely filing. *See id.* at 422 (to be entitled to discovery, taxpayer relying on common-law mailbox rule was obliged to "produce a prima facie case for the common law mailing presumption and some evidence to question the presumption of correctness of the government's records").

MMC fails to make the threshold showing necessary to entitle it to the requested discovery. Because, as discussed above, (i) a refund claim must have been actually delivered to the IRS for a taxpayer to avail itself of the protections of section 7502(a)(1), and there is no proof of such delivery of the claim at issue, and (ii) even assuming *arguendo* that lack of actual delivery does not prevent

16

the application of section 7502(a)(1), MMC cannot meet the evidentiary standard set forth in *Wood* or the other cases concerning extrinsic evidence of timely filing, MMC falls short of making a *prima facie* showing of its ability to avail itself of the protections of section 7502(a)(1).[4]

### III. Conclusion

For the foregoing reasons, treating the instant discovery dispute as a motion by MMC to compel the government to respond to its interrogatories and its request for production of documents, the motion is **_DENIED_**.

**_SO ORDERED_**.

### *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to appeal the district court's order.*

Dated this 10th day of February, 2011.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[4] It is difficult to discern how the government's responses to MMC's interrogatories and requests for production of documents could enable MMC to meet the requirements of section 7502(a)(1), unless, in the course of responding, the IRS were to run across the missing claim and its outer envelope, or some other evidence of its receipt of that document.